FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 10, 2018

SEAN F. McAVOY, CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

TRAVIS P.,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

No. 1:17-CV-03122-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 12 & 19. Plaintiff brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied his application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C § 1381-1383F. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

# I.    Jurisdiction

Plaintiff filed his application for Supplemental Security Income on October 7, 2013. AR 263-68. His alleged onset date of disability is September 18, 2013. AR 14, 263. Because there is a previous administratively final decision finding him not disabled prior to his application date, the relevant issue is whether he has been disabled since his application date of October 7, 2013. AR 14. Plaintiff's application was initially denied on February 26, 2014, AR 186-89, and on reconsideration on April 4, 2014, AR 198-99.

A hearing with Administrative Law Judge ("ALJ") Wayne N. Araki occurred on August 20, 2015. AR 40-69. On November 4, 2015, the ALJ issued a decision finding Plaintiff ineligible for disability benefits. AR 14-30. The Appeals Council denied Plaintiff's request for review on May 12, 2017, AR 1-4, making the ALJ's ruling the "final decision" of the Commissioner.

Plaintiff timely filed the present action challenging the denial of benefits, on July 11, 2017. ECF No. 3. Accordingly, Plaintiff's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

# II.    Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsbury v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in substantial activity, he or he is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months,

and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this

burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III. Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here. Plaintiff was 34 years old at the date the application was filed. AR 29, 263. He has limited education through the ninth grade and he is able to communicate in English. AR 29, 324, 850. Plaintiff has past work as a dishwasher, fruit sorter, painter, and laborer. AR 428.

## V.    The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act from October 7, 2013, through the date of the ALJ's decision. AR 15, 30.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 7, 2013 (citing 20 C.F.R. § 416.971 *et seq.*). AR 16.

**At step two**, the ALJ found Plaintiff had the following severe impairments: hypertension, hearing loss, speech impediment, learning disability, borderline intellectual functioning, depressive disorder, and anxiety disorder (citing 20 C.F.R. § 416.920(c)). AR 16.

At **step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 16.

**At step four**, the ALJ found Plaintiff had the residual functional capacity to perform medium work, except: he can occasionally climb ladders, rope, or scaffolding; he can frequently climb ramps and stairs; he can frequently balance, stoop, kneel, crouch, and crawl; he can have occasional exposure to vibration and extreme temperatures; he should not have any exposure to hazards, as the term is defined in the Dictionary of Occupational Titles; he should not work in an environment with a noise level of three or more, unless ear protection is worn; he

is able to remember, understand, and carry out instructions and tasks generally required by occupations with a specific vocational preparations of two or less; he should not have interaction with the general public; he can have occasional and superficial oral communication, including occasional interaction with coworkers and supervisors; his work should be in proximity of no more than twenty-five coworkers; he is able to complete tasks with no more than occasional close supervision by a supervisor; and he can tolerate this degree of supervision and assistance. AR 21.

The ALJ found that Plaintiff has no past relevant work. AR 29.

**At step five**, the ALJ found, in light of his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 29-30. These include industrial cleaner, laundry worker, packing line worker, and housekeeping cleaner. AR 30.

## VI.    Issues for Review

Plaintiff argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, he argues the ALJ erred by: (1) failing to find that Plaintiff's functioning does not meet listing 12.05; (2) improperly assessed Plaintiff's subjective complaint testimony; and (3) improperly weighed the medical opinion evidence.

**VII. Discussion**

**A. The ALJ Did Not Err in Finding That Plaintiff's Functioning Did Not Meet Listing 12.05.**

    **a. Legal Standard.**

Plaintiff argues that he is presumptively disabled at step three because he meets or exceeds the criteria of Listing 12.05. In Plaintiff's initial issues statement, he contends the ALJ erred by not finding he had met the criteria specifically for Listing 12.05C. ECF NO. 12 at 1. However, in his summary judgment brief he repeatedly states that the ALJ erred by not finding he had met the criteria for Listing 12.05A or Listing 12.05C. *Id*. at 5-12. In his brief Plaintiff does not actually present any argument that he meets Listing 12.05A despite repeatedly stating that he does, but he does present some argument that the ALJ should have found he met Listing 12.05B. *Id*. In his reply memorandum, Plaintiff states that his repeated statements that he met Listing 12.05A were actually a mistake and he meant to name Listing 12.05B instead and that the arguments in his opening brief should be understood as a contention that the ALJ erred in not finding his level of functioning to have met Listings 12.05B and 12.05C. Thus, the Court will address only Listings 12.05B and 12.05C.

A claimant is presumptively disabled and entitled to benefits if he or she meets or equals a listed impairment. To meet a listed impairment, a disability

claimant must establish that his condition satisfies each element of the listed impairment in question. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir.1999). To equal a listed impairment, a claimant must establish symptoms, signs, and laboratory findings at least equal in severity and duration to each element of the most similar listed impairment. *Tackett*, 180 F.3d at 1099-1100 (quoting 20 C.F.R. 404.1526).

The structure of Listing 12.05 is "unique" in that it "allows a claimant to be found per se disabled without having to demonstrate a disabling, or even severe, level of mental functioning impairment," which sometimes leads to "curious result[s]." *Abel v. Colvin*, 2014 WL 868821, at *4 (W.D. Wash. 2014) (internal citation and quotation marks omitted). "The structure of the listing for intellectual disability (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D). If [a claimant's] impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that [the claimant's] impairment meets the listing." 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Thus, a claimant must meet the standard set forth in the introductory paragraph and at least one of the four listed criteria. *Id.* 20 C.F.R. Pt 404, Subpt. P, App. 1, Listing 12.05 reads, in relevant part:

Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D, are satisfied . . .

B. A valid verbal, performance, or full scale IQ of 59 or less; or

C. A valid verbal, performance, or full IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

In sum, in order to be considered presumptively disabled under Listing 12.05B or 12.05C based on "intellectual disability," a claimant must present evidence of: (1) "significantly subaverage general intellectual functioning with deficits in adaptive functioning" which initially manifested before the age of 22 (i.e., "during the developmental period"); (2) a "valid verbal, performance, or full scale IQ of 59 or less" to meet Listing 12.05B or a "valid verbal, performance, or full scale IQ of 60 through 70" to meet listing 12.05C; and (3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function" is required for Listing 12.05C. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05C*; see Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir.2013).

It is important to note that, at step three of the sequential evaluation process, it is still the claimant's burden to prove that his impairment meets or equals one of the impairments listed in 20 C.F.R. § 404, Subpart P. *Oviatt v. Com'r of Soc. Sec.*

1 *Admin.*, 303 F. App'x 519, 523 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071,

2 1074–75 (9th Cir.2007); *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir.2005).

3      Here, the ALJ found Plaintiff does not meet Listings 12.05B or 12.05C

4 primarily because he does not have a valid verbal, performance, or full scale IQ of

5 59 or less or a valid verbal, performance, or full scale IQ of 60 through 70. AR 20.

6 The Court must now examine whether the ALJ's conclusion that Plaintiff did not

7 satisfy Listing 12.05 is supported by substantial evidence and free from legal error.

8      **b. IQ Score Validity.**

9      The primary element of the listings at issue is whether or not Plaintiff

10 provided a valid IQ score meeting the requirements of the listings.

11      As noted above, a finding of intellectual disability under Listing 12.05B

12 requires a valid verbal, performance, or full scale IQ of 59 or less and Listing

13 12.05C requires a valid verbal, performance, or full IQ of 60 through 70. 20 C.F.R.

14 Pt 404, Subpt. P, App. 1, Listing 12.05. Section 12.00(D) of the Appendix provides

15 that "where more than one IQ is customarily derived from the test administered ...

16 the lowest of these is used in conjunction with listing 12.05." *Williams v. Shalala*,

17 35 F.3d 573 (9th Cir. 1994) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, §

18 12.00(D)).

19      The Ninth Circuit directs that an ALJ can decide that an IQ score is invalid.

20 *Thresher v. Astrue*, 283 F. App'x 473, 475 (9th Cir. 2008). In *Thresher*, the Ninth

Circuit stated that the "regulations' inclusion of the word 'valid' in Listing 12.05(C) makes the ALJ's authority clear." *Id*. Thus, an IQ score may be rejected as an invalid score by an ALJ. However, the Ninth Circuit also noted that it had "never decided what information is appropriately looked to in deciding validity," but that other circuit courts have said that a score can be questioned on the basis of "other evidence," but without explaining "exactly how other evidence impacts the validity of the score itself," and that other courts require "some empirical link between the evidence and the score." *Id*. at 475 n. 6 (citations omitted). "*Thresher* left that issue unresolved, but it suggests, at a minimum, that an ALJ should not find that 'other evidence' renders an IQ invalid without explaining how that evidence impacts the validity of the score." *Gomez v. Astrue*, 695 F. Supp. 2d 1049, 1057 (C.D. Cal. 2010). Decisions from other courts indicate that the ALJ may rely on external evidence of a score's invalidity, such as improper testing conditions or a claimant's participation in activities inconsistent with the IQ score. *Jones v. Colvin*, 149 F. Supp. 3d 1251, 1258 (D. Or. 2016). The ALJ has responsibility to "determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (citing 42 U.S.C. § 405(b); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995)).

In November 2007, Plaintiff's IQ testing established that he had a verbal score of 72, a performance score of 95, and a full-scale IQ score of 80. AR 18, 20, 22, 26-27, 484, 514, 516, 783. Psychologists Roland Dougherty, Ph.D., and Arch Bradley, M.Ed., opined that Plaintiff's full-scale IQ score was in the average range; his verbal IQ was in the borderline range; and his performance IQ was in the average range. AR 486, 516. At multiple psychological examinations between 2012 and 2014, Plaintiff displayed primarily normal thought process, normal memory, and normal concentration. AR 18-19, 802-08, 806-12, 823-24, 827-29, 853, 854-58, 870.

During an examination in March 2013, Plaintiff again displayed normal thought process, normal memory, fund of knowledge within normal limits, and normal concentration during a psychological evaluation by Mark Duris, Ph.D. AR 19, 858. IQ testing yielded a verbal score of 57, a performance score of 79, and a full-scale IQ score of 64, resulting in a diagnosis of borderline intellectual functioning. AR 19, 20, 23, 855, 856.

Plaintiff contends that these scores from March 2013 should be considered valid and prove that he meets Listing 12.05. However, the ALJ found these IQ scores from March 2013 are not valid for multiple reasons. AR 17-20. Specifically, the ALJ noted that Plaintiff's treatment records did not refer to any event or disease that would account for a subsequent cognitive decline between the two sets

of IQ scores. AR 27. A "person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning." *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001); *see also Hodges v. Barnhart*, 276 F.3d 1265, 1268 (11th Cir. 2001) (presumption that IQ scores "remain fairly constant throughout life"). Additionally, the ALJ noted that Plaintiff's participation in multiple activities was inconsistent with the lower IQ results. AR 20. The ALJ noted that Plaintiff is able to maintain all of his basic activities, financial management, shopping, and transportation on his own. AR 20. Plaintiff lives with his girlfriend and her son without issue and reports that it is not difficult at all to meet home, work, and social obligations. AR 20. The ALJ may rely on external evidence of a score's invalidity, such as a claimant's participation in activities inconsistent with the IQ score. *Jones v. Colvin*, 149 F. Supp. 3d 1251, 1258 (D. Or. 2016). The ALJ also noted that all of the other psychological tests at this time showed only normal findings. AR 20. Further, the ALJ's decision is supported by Dr. Gentile's determination that Plaintiff does not meet Listing 12.05 and the doctor's note that the 23-point difference between Plaintiff's IQ scores may be due to a hearing deficit, rather than psychological impairment. AR 573, 581.

The ALJ pointed to multiple reasons, supported by the record, for not finding Plaintiff's March 2013 IQ scores to be valid. The Court finds the reasons provided by the ALJ to be sufficient. When the ALJ presents a reasonable

interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d at 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). The Court's review of the record confirms that the ALJ's determination that Plaintiff's impairment does not fall within the scope of Listing 12.05 is supported by substantial evidence. As such, the Court concludes that a finding in Plaintiff's favor is not warranted. Because Plaintiff does not have a valid verbal, performance, or full scale IQ of 59 or less or a valid verbal, performance, or full IQ of 60 through 70, the requirements of Listing 12.05B and Listing 12.05C are not met.

**B. The ALJ properly weighed the medical opinion evidence.**

**a. Legal Standard.**

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than his or his own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### b.  Jan Kouzes, Ed.D.

Dr. Kouzes is an examining doctor who completed a psychological evaluation for the Washington State Department of Social and Health Services in May 2012. AR 25, 821-24. Dr. Kouzes did not actually provide an opinion or assessment of Plaintiff's abilities of limitations, but stated that Plaintiff had issues

with self-esteem and self-confidence and a sheltered and flexible work site would improve Plaintiff's willingness to work. AR 25, 821-23.

The ALJ assigned no weight to Dr. Kouzes' statements for multiple valid reasons. AR 25-26. First, the ALJ noted that this is not actually a medical opinion as it does not provide an assessment of Plaintiffs abilities or limitations. AR 25. The regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairments(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairments(s), and [her] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). Dr. Kouzes' statements regarding Plaintiff's willingness to work contains no mention of a specific severity, Plaintiff's prognosis, how this condition would limit or impair Plaintiff, or what Plaintiff can still do despite his impairments. Additionally, the ALJ stated that he was instead relying on Plaintiff's actual work history, longitudinal examination findings, and activities since the date of the last ALJ decision. AR 25. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Additionally, an ALJ may properly reject an opinion that provides restrictions that appear inconsistent with the claimant's level of activity. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Furthermore, Dr. Kouzes' statements were made

roughly a year and a half before the alleged onset date of disability. S*ee, Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996) (noting that opinions from outside the relevant period are of limited value because they do not provide reliable evidence of a claimant's functioning during the relevant time period); s*ee also Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted).

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Thus, the Court finds the ALJ did not err in his consideration of Dr. Kouzes' opinion.

### c. Aaron R. Burdge, Ph.D.

Dr. Burdge is an examining psychologist who completed a psychological evaluation for the Washington State Department of Social and Health Services in October 2012. AR 26, 826-30. Dr. Burdge opined that Plaintiff had mild or no limitations in his abilities to plan independently, to ask simple questions, to be aware or normal hazards, to make simple decisions, to adapt to changes in a routine work setting, to perform routine tasks, to learn new tasks, to maintain

regular attendance, or to persist with wimple or detailed instructions; and that

Plaintiff had moderate limitations in his abilities to maintain appropriate behavior,

to communicate effectively in a work setting, or to complete a normal workday.

AR 828-29. Plaintiff briefly contends that the ALJ erred in discounting this opinion

by failing to provide specific reasons for doing so. ECF No. 12 at 14.

The ALJ did not completely reject Dr. Burdge's opinion, indeed the ALJ

actually agreed with Dr. Burdge's opinion and incorporated the assessed

limitations into Plaintiff's residual functional capacity assessment. AR 26.

Nevertheless, this opinion was afforded some weight. *Id*. As noted by the ALJ, Dr.

Burdge provided this opinion nearly a year before the onset date of disability. AR

26, 826-30; s*ee*, *Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996) (noting that

opinions from outside the relevant period are of limited value because they do not

provide reliable evidence of a claimant's functioning during the relevant time

period); s*ee also Vincent ex rel. Vincent*, 739 F.2d at 1394-95 (citation omitted).

Additionally, Dr. Burdge's assessment applied only for six to nine months and

therefore does not satisfy the 12-month durational requirement. 42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A). Importantly, Plaintiff identifies no additional

limitations in Dr. Burdge's opinion that were not included by the ALJ.

When the ALJ presents a reasonable interpretation that is supported by the

evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853,

857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Thus, the Court finds the ALJ did not err in his consideration of Dr. Burdge's opinion.

### d. Mark Duris, Ph.D.

Dr. Duris is an examining doctor who completed a psychological evaluation for the Washington State Department of Social and Health Services in March 2013. AR 26, 854-58. Dr. Duris opined that Plaintiff had mild limitations in his abilities to maintain appropriate behavior, to be aware of normal hazards, to make simple decisions, or to persist with simple instructions; he opined that Plaintiff had moderate limitations in his abilities to complete a normal workday, to ask simple questions, to communicate effectively in a work setting, to adapt to changes in a routine work setting, to perform routine tasks, to learn new tasks, or to maintain regular attendance; and he opined that Plaintiff had marked limitations in his ability to plan independently or to persist with detailed instructions. AR 857.

The ALJ did not completely discount Dr. Duris' opinion, but afforded the opinion some weight. AR 26. The ALJ provided multiple valid reasons for assigning some weight to the opinion. *Id*. The ALJ found that the moderate and

marked limitations are inconsistent with Plaintiff's examination findings, Dr. Duris failed to provide an explanation for his opinion, the opinion appears to be based heavily on subject reports from the Plaintiff and an invalidated WAIS-III exam, and the opinion is inconsistent with Plaintiff's daily activities. AR 26-27. As noted by the ALJ, Plaintiff's contemporary mental examinations performed by Dr. Duris demonstrated that Plaintiff had normal thought process and content, normal judgment, normal memory, normal concentration, and all other mental functioning was within normal limits. AR 27, 858. Dr. Duris did not provide any reasoning for his opinion or why it was more extreme than the mental status examination notes. A discrepancy between a doctor's recorded observations and opinions is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Additionally, "an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Id*. The ALJ also found that the opinion appears to be based primarily on Plaintiff's subjective complaints that the ALJ has found not entirely credible, and on the WAIS-III testing the ALJ previously found to be invalid because there is nothing more in the opinion and accompanying notes that would account for the level of limitations in Dr. Duris' opinion. An ALJ may discount even a treating provider's opinion if it is based largely on the claimant's self-reports and not on clinical evidence, and the ALJ finds the claimant not credible.

*Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Lastly, the ALJ noted that the opinion is inconsistent with Plaintiff's actual level of activity, including his ability to independently take care of all of his basic activities, financial management, shopping, and transportation. AR 27. This determination is supported by the record. An ALJ may properly reject an opinion that provides restrictions that appear inconsistent with the claimant's level of activity. *Rollins*, 261 F.3d at 856. Furthermore, Plaintiff has not identified any additional limitations in Dr. Duris' opinion that were not included by the ALJ.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Thus, the Court finds the ALJ did not err in his consideration of Dr. Duris' opinion.

### e. Rebecca A. Cline, Ph.D.

Dr. Cline is an examining doctor who completed a psychological evaluation for the Washington State Department of Social and Health Services in September 2014 and August 2015. AR 28, 849-53, 866-70. Dr. Cline opined in September

2014 that Plaintiff had mild or no limitations in his abilities to be aware of normal hazards, to adapt to changes in a routine work setting, to perform routine tasks, to maintain regular attendance, or to persist with simple instructions; he had moderate limitations in his ability to plan independently, to maintain appropriate behavior, to complete a normal workday, to ask simple questions, to make simple decisions, to learn new tasks, or to persist with detailed instructions; and he had marked limitations in his ability to communicate effectively in a work setting. AR 851-52. In August 2015 Dr. Cline opined that Plaintiff had similar impairments as before, but that he no longer had any marked impairments and his ability to communicate effectively in a work setting was a moderate limitation instead. AR 868-69. Dr. Cline also stated in August 2015 that Plaintiff "appears from a mental health standpoint to be capable of employment, but lacks motivation and confidence to seek it." AR 869. Plaintiff briefly contends that the ALJ erred in discounting this opinion by failing to provide specific reasons for doing so. ECF No. 12 at 14.

The ALJ did not completely reject or discount Dr. Cline's opinion, but afforded it some weight and actually incorporated the latter opinion's limitations into Plaintiff's residual functional capacity assessment. AR 28. However, the opinions were afforded less weight because they are inconsistent with longitudinal examination findings and treatment records. AR 28. Indeed, Plaintiff's longitudinal record demonstrates very little mental health treatment and little effort to seek

mental health treatment, and the record is replete with normal mental health examination findings, including the normal mental health findings described by Dr. Cline. A discrepancy between a doctor's recorded observations and opinions is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Additionally, an ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan*, 169 F.3d 595, 602-603. Notably, Dr. Cline's first assessment only applied for six to nine months and the second assessment only applied for zero to six months and therefore do not satisfy the 12-month durational requirement. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Additionally, Plaintiff again has not identified any additional limitations in Dr. Cline's opinion that were not included in the residual functional capacity by the ALJ.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Thus, the Court finds the ALJ did not err in his consideration of Dr. Cline's opinion.

### f. Richard Borton, Ph.D.

Dr. Borton is a reviewing doctor who reviewed Plaintiff's records in April 2014. AR 27-28, 114-26. Dr. Borton opined that Plaintiff could understand, remember, and carry out simple repetitive tasks; he could maintain concentration in two-hour intervals, but that would be distracted by too many coworkers in his close proximity; he would work best around few or no people; he could interact appropriately with others on a superficial basis; he could work towards goals set by others; and, based on the March 2013 evaluation, he would require close supervision, both initially and over extended periods of time, and he was unable to sustain a normal work routine without special supervision. *Id.*

Again, the ALJ did not completely discount this opinion, but assigned it some weight. AR 27. The ALJ stated that only some weight was given because the ALJ had already appropriately found that the testing from the March 2013 evaluation is not an accurate representation of Plaintiff's functioning; Plaintiff's work history and Plaintiff's own statements regarding his ability to work undermine the opinion; and Plaintiff's unemployment is due to his criminal record and substance abuse rather than his current functional capacity. AR 27-28. The record supports the ALJ's decision. Plaintiff himself states that he has no difficulties with meeting all home, work, and social obligations, and that he has stopped trying to look for work because his biggest barrier is his criminal record.

AR 28, 803, 822, 826, 862. An ALJ may properly reject an opinion that provides restrictions that appear inconsistent with the claimant's level of activity. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan*, 169 F.3d 595, 602-603.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Thus, the Court finds the ALJ did not err in his consideration of Dr. Borton's opinion.

**C. The ALJ did not err in finding Plaintiff's subjective complaints not entirely credible.**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.*

Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [her] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce the symptoms Plaintiff alleges; however, the ALJ determined that Plaintiff's statements of intensity, persistence, and limiting effects of the symptoms were not entirely credible. AR 22. The ALJ provided multiple clear and convincing reasons for discrediting Plaintiff's subjective complaint testimony. AR 21-25.

First, the ALJ noted that the medical evidence does not support Plaintiff's allegations of totally disabling physical and mental limitations. AR 22-24. The ALJ

specifically noted the multiple normal physical and mental examination findings throughout the record. AR 18-20, 22-24, 809, 812-13, 823-24, 830, 853, 870. Inconsistency between a claimant's allegations and relevant medical evidence is a legally sufficient reason to reject a claimant's subjective testimony. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). An ALJ may discount a claimant's subjective symptom testimony that is contradicted by medical evidence. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

Second, the ALJ noted Plaintiff's reasons he provided for not working other than for issues related to his impairments. AR 24. Plaintiff states that his criminal record was his "biggest barrier" to working and he has topped trying to look for work because of his criminal record. AR 24-25, 27-28, 822, 826. Plaintiff had also worked previously notwithstanding his psychological issues, but he lost his previous job due to alcohol abuse. AR 24, 28, 822. The fact that Plaintiff stopped work for reasons other than his impairments is a sufficient basis to discredit testimony. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

Third, the ALJ noted that Plaintiff's mental impairments, aside from his cognitive limitations, were well controlled with medication or in sustained remission, and Plaintiff was noncompliant with medical treatment and demonstrated a lack of effort to seek any mental health treatment. *See* AR 18, 19, 22, 23, 827. A claimant's statements may be less credible when treatment is

inconsistent with the level of complaints or a claimant is not following treatment prescribed without good reason. An ALJ may also find a claimant's symptom testimony not credible based on evidence of effective responses to treatment. *See*, *e.g.*, *Burch*, 400 F.3d at 681; 20 C.F.R. §§ 404.1529(c)(3), 416.1529(c)(3); *Molina*, 674 F.3d at 1114. "Unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of [a] claimant's [] testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). If a claimant's condition is not severe enough to motivate them to follow the prescribed course of treatment this is "powerful evidence" regarding the extent to which they are limited by the impairment. *Burch*, 400 F.3d at 681.

Fourth, the ALJ discounted Plaintiff's credibility in part because of his inconsistent statements. AR 18, 23. For example, Plaintiff testified that he had panic attacks, impaired concentration, and significant deficits in psychological functioning; however, the ALJ noted that Plaintiff contradicted these claims in his treatment records. AR 18, 23, 61-62, 846 (denies panic symptoms), 847 (denies history of panic attacks), 850 (controlled with medication), 862. An ALJ may rely on ordinary techniques of credibility evaluation such as inconsistent statements. *Smolen*, 80 F.3d at 1284.

Lastly, the ALJ found Plaintiff's allegations of disabling limitations are belied by his daily activities. AR 24. These include Plaintiff's ability to accomplish

his personal care alone, manage his own finances, do his own shopping, use the computer, provide his own transportation, cook for himself and his girlfriend, go fishing, and play video games. AR 17-19, 20, 24, 27, 49, 823, 855, 867. Activities inconsistent with the alleged symptoms are proper grounds for questioning the credibility of an individual's subjective allegations. *Molina*, 674 F.3d at 1113 ("[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"); *see also Rollins v.*, 261 F.3d at 857.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d at 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). The Court does not find the ALJ erred when discounting Plaintiff's credibility because the ALJ properly provided multiple clear and convincing reasons for doing so.

\\

\\

\\

# VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 19,** is **GRANTED.**

3. Judgment shall be entered in favor of Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 10th day of September, 2018.

_s/Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge